**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JP MORGAN CHASE BANK, N.A.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 11-00263-KD-M** |
| | ) | |
| **KATHERINE B. SUREK,** | ) | |
| **Defendant.**[1] | ) | |

**ORDER CONFIRMING FORECLOSURE SALE**

This matter is before the Court on Plaintiff JP Morgan Chase Bank, N.A.'s Response (Doc. 32) to the Court's Order (Doc. 30) regarding its previously filed "Motion to Confirm Foreclosure Sale" (Doc. 29). The Court construes the Response as a motion to reconsider the prior ruling (Doc. 30).

Specifically, in the prior order regarding the Motion to Confirm the Foreclosure Sale (Doc. 30), the Court ruled as follows:

> Pursuant to the "Judgment and Decree of Foreclosure" issued on February 7, 2012 (Doc. 26), the judicial foreclosure sale of the property at issue in this case was conducted by the United States Marshal. Plaintiff represents to the Court that it made the only and highest bid for the property at the foreclosure sale in the amount of $326,547.36, and that the auctioneer declared Plaintiff the successful bidder. Plaintiff asserts further that the foreclosure sale "was duly and properly conducted in accordance with the Mortgage Foreclosure Notice of Sale and the Foreclosure Judgment." (Doc. 29 at 2). Based on the foregoing, Plaintiff now requests that the Court: 1) confirm the foreclosure sale; 2) approve the cost of publication of the mortgage foreclosure sale notice ($860.49); 3) award post-judgment interest in the amount of $8,149.96 (182 days x the per diem contractual rate of $44.78, for the days between entry of the foreclosure judgment and the present motion), with interest continuing to accrue at the rate of $44.78 per diem until the judgment is satisfied in full; 4) approve the U.S. Marshal's bill to conduct the foreclosure sale ($4,913.21); and 5) approve the foreclosure deed drafted by Plaintiff (for submission to the U.S. Marshal).   In so doing, Plaintiff also asserts that Defendant Katherine Surek is entitled to a credit in the amount of $320,773.66 based on Plaintiff's bid price ($326,547.36) minus "allowable costs associated with the sale." (Doc. 29 at 3).

---

[1] Christopher Surek was the only other defendant; however, Plaintiff voluntarily dismissed all of its claims against him pursuant to Rule 41. (Doc. 31).

Courts have broad discretion in determining whether to confirm or refuse to confirm a judicial sale. See, e.g., Citibank, N. A. v. Data Lease Financial Corp., 645 F.2d 333 (5th Cir. 1981); Wood River Dev. v. Armbrester, 547 So.2d 844, 848 (Ala. 1989); Lynn v. Dodge, 727 So.2d 89 (Ala. Civ.App. 1997); Davis v. Battle, 675 So.2d 460 (Ala. Civ. App. 1996). Such determinations ordinarily will not be disturbed except for an abuse of discretion, recognizing the strong public policy in favor of the finality of judicial sales. Id. Generally courts have adopted the policy that confirmation will not be refused except for substantial reasons, and that in the absence of fraud or misconduct, the highest bidder will ordinarily be accepted as the purchaser of the property offered for sale.   See, e.g., First Nat. Bank of Jefferson Parish v. M/V Lightning Power, 776 F.2d 1258 (5th Cir. 1985); Harduval v. Merchants' & Mechanics' Trust & Savings Bank, 86 So. 52 (Ala. 1920) (finding that a purchaser at judicial sale is entitled to have the sale confirmed by the court in the absence of irregularity, misconduct, fraud, mistake, or gross inadequacy of price amounting in itself to fraud). There is no evidence of record of irregularity, misconduct, fraud, mistake or gross inadequacy of price amounting in itself to fraud in the foreclosure sale. Plaintiff has also represented to the Court that the foreclosure sale "was duly and properly conducted in accordance with the Mortgage Foreclosure Notice of Sale and the Foreclosure Judgment." (Doc. 29 at 2). Accordingly, it is **ORDERED** that the foreclosure sale of the property at issue in this case, in the amount of **$326,547.36** as bid by Plaintiff (the only and highest bidder), is **HELD IN ABEYANCE** pending a determination of the precise credit due to Defendant Katherine Surek.

Turning to the other items requested by Plaintiff, the Court finds as follows. The February 7, 2012 Judgment and Decree of Foreclosure governing the foreclosure proceeding specifies that "Plaintiff is responsible for payment of the expenses associated with the foreclosure sale." (Doc. 26 at 2). As such, it is **ORDERED** that Plaintiff's request that the Court approve the $860.49 publication costs (Doc. 29-1 at 2) and $4,913.21 for the Marshal's bill (Doc. 29-1 at 3) as "allowable costs associated with the sale," and by so doing deduct these amounts from the bid amount, is **DENIED.**

Plaintiff also seeks an award of post-judgment interest in the amount of $8,149.96 (182 days x the per diem contractual rate of $44.78, covering the days between entry of the foreclosure judgment and the date of the present motion), adding that interest continues to accrue at the rate of $44.78 per diem until the judgment is satisfied in full. However, Plaintiff has not referenced any portion of the relevant loan and mortgage documents where post-judgment interest is allowed and/or post-judgment interest at a specific rate which would result in the sum of $8,149.96. As such, it is **ORDERED** that Plaintiff's request for $8,149.96 in post-judgment interest as well as its further request for additional interest ("interest continues to accrue until the judgment is satisfied in full[]"), is **DENIED.**

Further, attached to Plaintiff's motion to confirm the foreclosure sale is a proposed foreclosure deed for the U.S. Marshal to execute, for which Plaintiff seeks the

2

Court's approval. (Doc. 29-1 at 4-8). The Judgment and Decree of Foreclosure provides that rather than the Plaintiff, "the U.S. Marshal's Office shall deliver a foreclosure deed to the successful bidder upon payment of the bid price and delivery of same in certified funds payable to the Clerk of Court[]" and "the U.S. Marshal's Office shall deliver a foreclosure deed to Plaintiff[]" if Plaintiff is the successful bidder. (Doc. 26 at 2). As the proposed deed appears to be proper, it is **APPROVED.**

As to the credit due Defendant Katherine Surek, the foreclosure sale price was $326,547.36 and the default judgment against Defendant Katherine Surek was in the amount of $314,912.83.   Plaintiff asserts that Defendant Katherine Surek is due a credit of $320,773.66. It appears that Plaintiff arrives at this figure by asserting "less allowable costs associated with the sale[]" (*i.e.*, that Plaintiff simply subtracted the publication costs and U.S. Marshal's fee (a combined total of $5,773.70)). (Doc. 29 at 3). As stated *supra*, Plaintiff bears the foreclosure sale expenses such that Plaintiff's credit calculation appears to be incorrect. Moreover, there is no explanation as to why Plaintiff paid $11,634.53 more for the property than was actually owed pursuant to the Default Judgment Order (Doc. 21). Under Davis v. Huntsville Prod. Credit Ass'n, 481 So.2d 1103, 1105-1106 (Ala. 1985), the debtor is entitled to surplus proceeds from sale of mortgaged property, where property was sold at foreclosure sale for amount in excess of mortgage debt. As such, the Plaintiff is **ORDERED** to file a Response on or before **June 21, 2012,** explaining its position concerning the amount due to Defendant Katherine Surek.

Presently, in the Response, Plaintiff asserts that it should be entitled to deduct the expenses from the foreclosure bid (the publication costs and Marshal's bill).   (Doc. 32 at 3). While the Court's Judgment and Decree of Foreclosure (Doc. 26 at 2) provides that "Plaintiff is responsible for payment of the expenses associated with the foreclosure sale[]" (based on Plaintiff's proposed order filed with the Court), the Promissory Notes nevertheless provide for the recovery of Collection Costs and Expenses in the event of default (which occurred in this case).   (Doc. 1-1).   The Court presumes that this language in the Plaintiff's proposed order was a typographical error, as the contracts make Defendant Surek liable for such costs and expenses. As such, the Court reconsiders its prior ruling denying same, and finds that Plaintiff is entitled to recover the **$860.49** publication costs as well as the **$4,913.21** for the Marshal's bill as "allowable costs associated with the sale" and by so doing, **DEDUCT** these amounts from the

3

bid amount.

As for the post-judgment interest, the Court reconsiders its prior ruling denying same, based on the following.   Plaintiff asserts that it previously "provided notice that it was requesting post judgment default interest pursuant to the agreed contractual rate[]" (Doc. 32 at 5-6) and seeks a minimum of $8,149.96 for post-judgment interest but adds that such continues to accrue (Doc. 29 at 2).   However, this assertion intermingles two separate and distinct legal concepts: post-judgment interest following entry of a default judgment and interest after a default on a contract/note.   Only interest after default is provided for in the Promissory Notes:

> INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the total sum due under this Note will bear interest from the date of acceleration or maturity at the variable interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

This language addresses interest upon the event of a default on a borrower's note, *not* interest upon Plaintiff's receipt of entry of a default judgment.   There is no specific language in the Promissory Notes providing for post-judgment interest.

Plaintiff's proposed order (submitted with its prior motion) provides its reasoning behind the request for post-judgment interest.   Specifically, Paragraph 5 of Doc. 32-1 (Plaintiff's proposed order) states:

> The promissory notes and mortgages at issue in this case provide for default interest not to exceed 21% per annum and that all expenses incurred by Chase for protection of its interest or enforcements of its rights shall become part of the loan payable upon demand. The parties are free to stipulate to a different rate of post-judgment interest from the standard rate set forth in 28 U.S.C. §1961. See In re: Lift and Equipment Service, Inc., 816 F. 2d 1013, 1018 (5th Cir. 1987). The Court finds that the agreement here for default interest constitutes such a permissible stipulation to a different rate of postjudgment interest and that the balance on final judgment shall bear interest at the rate of 21% per annum until paid in full. (underlining added for emphasis)….

However, this language, setting forth an alternative post-judgment interest rate is not

4

clear, unambiguous, and unequivocal, and thus, Plaintiff is incorrect in its assertion that this is a permissible stipulation.   See, e.g., Vision Bank v. Garrett Investments, LLC, 2012 WL 628915, *1 and *3 (S.D. Ala. Feb. 27, 2012).[2]   Similar to Vision Bank, the promissory notes in this case do not contain the type of "clear, unambiguous and unequivocal language" necessary to circumvent the statutory interest rate.   Id. at 4.   There was no set agreement or explanation as to what a post-judgment interest rate would be in the loan documents.   As a result, Plaintiff is entitled to post-judgment interest based on the statutory rate provided for in 28 U.S.C. § 1961. 28 U.S.C. § 1961(a) provides that the rate of interest "shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1–year constant maturity Treasury [bill] ... for the calendar week preceding the date of the judgment."   Vision Bank, supra; see also G.M. Brod & Co., Inc. v. U.S. Home Corp., 759 F.2d 1526, 1542 (11th Cir. 1985) (holding that Section 1961 applies in diversity cases).

After granting the motion for entry of default judgment against Defendant Surek in November 2011 (Doc. 21), the Court subsequently entered a Judgment and Decree of Foreclosure in favor of Plaintiff on February 7, 2012, which was docketed on February 8, 2012 (Doc. 26).   "Post judgment interest is awarded to compensate a plaintiff for having been deprived of the value of principal losses from the time of judgment to the time that the plaintiff is

---

2  Although the Eleventh Circuit has not specifically addressed the issue, the consensus among courts that have is that parties may agree to a different post-judgment interest rate. See, e.g., FCS Advisors, Inc. v. Fair Finance Co., Inc., 605 F.3d 144, 148-149 (2nd Cir. 2010); In re Riebesell, 586 F.3d 782, 794 (10th Cir. 2009); Central States, Southeast & Southwest Areas Pension Fund v. Bomar Nat'l, Inc., 253 F.3d 1011, 1020 (7th Cir. 2001); In re Lift & Equip. Serv., Inc., 816 F.2d 1013, 1018 (5th Cir. 1987). However, "federal law requires 'language expressing an intent that a particular interest rate apply to judgments or judgment debts' to be 'clear, unambiguous and unequivocal.'" Jack Henry & Assoc., Inc. v. BSC, Inc., 753 F.Supp.2d 665, 670 (E.D. Ky. 2010). This requirement arises from the principal that the debt is extinguished upon entry of judgment and a new debt, a judgment debt, is created. Id. "The parties must explicitly state that they are agreeing to a post-judgment interest rate." Id.

actually paid."   Becker Holding Corp. v. Becker, 78 F.3d 514, 516 (11th Cir. 1996).   "It is well settled in Alabama that foreclosure of a mortgage extinguishes the debt to the amount of the purchase price, if that amount is less than the debt, or extinguishes the entire debt if the purchase price is more than that amount."   Davis v. Huntsville Prod. Credit Ass'n, 481 So.2d 1103, 1105-1106 (Ala. 1985) (finding that a mortgage debt was extinguished on the date of the foreclosure sale).   Therefore the proper calculation period is from the judgment date, February 8, 2012, to the date of the foreclosure sale, March 15, 2012 – 36 days.   The correct amount of post-judgment interest is $34.98 (using the statutory rate of 0.12%, as the post judgment interest amount equals 36 days x 0.12% totaling $34.98).   Thus, **post-judgment interest** shall be awarded to Plaintiff in the amount of **$34.98.**

Regarding pre-judgment interest ("accrued interest"), Plaintiff contends that it is entitled to $34,971.42 for interest accrued prior to the entry of final judgment.   (Doc. 32-1 at 2).   Plaintiff was previously awarded $19,253.64 in accrued interest.   (Doc. 21 at 7).   This was the amount of accrued interest as of June 29, 2011.   In support of its assertion, Plaintiff relies on the Affidavit of D'ann Walker, the Vice President of J.P. Morgan Chase to determine these calculations.   (Doc. 13-1).   Plaintiff argues that an additional $15,717.78 has accrued in the 351 days since the July 6, 2011 Affidavit explaining the calculation.   The relevant dates, however, run only until the date of final judgment, not to the current date (or here, the date of Plaintiff's motion or Response).   "Prejudgment interest runs until the date of the judgment; postjudgment interest runs thereafter."   State v. Marble City Plaza, Inc., 989 So.2d 1059, 1060 at note 4 (Ala. Civ. App. 2006).   The date of the final judgment was February 8, 2012.   (Doc. 26).   Assuming Plaintiff's per diem rate, Plaintiff is due an additional amount of $10,030.72 for the additional pre-judgment interest that has accrued since the June 29, 2011 (as 224 days passed

6

between June 29, 2011 and February 8, 2012 with a per diem interest rate of $44.78 per day). As such, the Court amends the prior accrued interest or pre-judgment interest award as follows: Plaintiff is entitled to *additional* pre-judgment interest in the amount of $10,030.72, which when added to the prior award of $19,253.64, provides for a *total* pre-judgment interest award of **$29,284.36.**

Concerning any windfall to Defendant Surek, the Court finds as follows: the default judgment against Defendant Surek was in the amount of $314,912.83. (Doc. 21) (comprised of $295,584.19 for the principal, $19,253.64 in accrued interest, plus $75.00 in late charges/fees). At the foreclosure, the sale price of the property was $326,547.36. (Doc. 29 at 2). Plaintiff made the only bid and was declared the successful bidder. (Id.) The Court's February 7, 2012 order (Doc. 26 at 2) provides: "[i]f Plaintiff is the successful bidder, Plaintiff's bid price shall constitute a credit against the money judgment heretofore entered against Katherine B. Surek in the Court's Order of November 3, 2011." Taking the foreclosure sale price ($326,547.36) minus the costs of publication and Marshal ($5,773.70), results in $320,773.66, which at first glance would appear to result in a credit of $5,860.83 to Defendant Surek given that the default judgment against her totals only $314,912.83. However, due to the additional pre-judgment of **$10,030.72** and **$34.98** in post-judgment interest at the statutory rate due to Plaintiff – for a total of **$10,065.70** -- Defendant Surek is not due any credit or windfall, as the excess of $5,860.83 must be assessed against the interest amounts outstanding to Plaintiff. Taking such interest into consideration, Defendant Surek is left with a balance of **$4,204.87 *owed to Plaintiff*** ($10,065.70 for pre/post judgment interest minus the $5,860.83 above the default judgment total).

Finally, in conjunction with this Order, the U.S. Marshal's office is **DIRECTED** to, within **seven (7) days**, deliver a foreclosure deed to Plaintiff JP Morgan Chase Bank, N.A. in the

form previously approved by the undersigned on June 14, 2012 (Doc. 30 at 3-4 (referencing the proposed deed at Doc. 29-1 at 4-8)).

**DONE** and **ORDERED** this the **2nd** day of **January 2013.**

s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**